**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION AT LEXINGTON**

**KIMBERLY JOHNSON**

**Plaintiff,**

**v.**

**KENTUCKY DEPARTMENT OF EDUCATION, *et al.***

**Defendants.**

**CASE NO. 3:23-CV-49-KKC**

**OPINION AND ORDER**

*** *** ***

This matter is before the Court on the Plaintiff's Motion to Alter or Amend the Court's July 13, 2026 Order denying her Motion for Temporary Restraining Order, Preliminary Injunction, and to Lift the Stay in this Matter. (R. 73.) Now that this motion is fully briefed, it is ripe for the Court's review. For the following reasons, the Plaintiff's Motion to Alter or Amend (R. 73) will be denied.

## I. BACKGROUND

As the protracted litigation history in this matter has been set forth by this Court in numerous recent Orders, the Court here provides only the facts relevant to the instant motion. (*See* R. 60, 72.) This action takes place parallel to an Education Professional Standards Board (EPSB) investigation into Dr. Kimberly Johnson's conduct. Dr. Kimberly Johnson, proceeding *pro se*, initiated this action on July 19, 2023, against several state government entities and persons associated with those entities in their official and individual capacities. (R. 1.) In her Complaint, Dr. Johnson alleged, *inter alia*, that the Defendants denied her the right to due process in violation of 42 U.S.C. § 1983, the Fourteenth Amendment, the Kentucky Constitution, and Kentucky law. (*Id.*) Dr. Johnson alleges that

the Defendants retaliated against her after she reported discriminatory, unethical, and illegal actions taken by the Defendants. (*Id.*) At the time of these events, Dr. Johnson was employed as a school counselor in the Jefferson County Public School District. (*Id.*) The Court has abstained from this action, pursuant to *Younger* abstention, since June 18, 2024, and the action has been stayed since that date. (R. 38.)

Dr. Johnson has asked the Court several times in the interim to interfere with the state proceedings. First, on August 27, 2025, Dr. Johnson filed her first motion to lift the stay, citing conflicts of interest in the state proceedings that she claimed amounted to "bad faith." (R. 42.) The Court denied her request, finding that Dr. Johnson's conclusory statements of bias were insufficient to warrant intervention. (R. 45.) Then, on June 10, 2026, following a debate over joint status reports, Dr. Johnson filed a Motion for Temporary Restraining Order, Motion for Preliminary Injunction, and Motion to Lift the Stay. (R. 56, R. 58, R. 59.) In her Motion for Temporary Restraining Order, Dr. Johnson asked the Court to enjoin EPSB from "issuing, entering, enforcing, or implementing any final order of professional sanction" against her. (R. 56.) On June 12, 2026, the Court denied her request for a Temporary Restraining Order, finding that *Younger* counseled against interference with the state proceedings, and that Dr. Johnson had otherwise failed to demonstrate irreparable harm that could be remedied by a temporary restraining order. (R. 60.) At this time, the Court did not issue a decision on Dr. Johnson's other motions, opting to allow those motions to become ripe before considering their merits. (*Id.*)

Unsatisfied with this result, on June 16, 2026, Dr. Johnson filed an "Emergency" Motion for Reconsideration, alleging a "critical error of fact and law embedded in the Court's reasoning." (R. 61.) Finding no such error, the Court denied her request for reconsideration. (R. 62.) The parties then briefed the Motion for Preliminary Injunction and the Motion to Lift the Stay, and on July 2, 2026, Dr. Johnson filed yet another Motion for Temporary

Restraining Order. (R. 68.) At this point in time, the EPSB had issued its Final Order, so Dr. Johnson asked the Court to prevent its enforcement against her, rather than enjoin its issuance. (*Id.*) Because the EPSB had issued its Final Order, Dr. Johnson asserted that the state proceedings were no longer "ongoing" for purposes of *Younger* and thus, Court intervention was warranted. (*Id.*) The Court disagreed, finding that Dr. Johnson's state proceedings remained ongoing, and none of the exceptions to *Younger* counselled in favor of judicial intervention. (R. 72.) Thus, the Court denied Dr. Johnson's Motion to Lift the Stay, Motion for Preliminary Injunction, and Motion for Temporary Restraining Order on July 13, 2026. (*Id.*)

Undeterred, Dr. Johnson moved for reconsideration of this Court's Order, styled as a "Motion to Alter or Amend Judgment Under Federal Rule of Civil Procedure 59(e)." (R. 73.) Therein, Dr. Johnson asserts four "independent grounds" for reconsideration: (1) the timing and method of service of EPSB's Final Order, (2) documented allegations of bias and bad faith, (3) the existence of an "inadequate forum exception" to the *Younger* abstention doctrine, and (4) the contradictory nature of EPSB's Final Order. (*Id.* at 2.) The Defendants filed a timely Response, and Dr. Johnson filed a timely Reply. (R. 77, 78.) In Reply, Dr. Johnson alternatively moved for reconsideration under Federal Rule of Civil Procedure 54(b). (R. 78.) The matter is now ripe for review. The Court, having reviewed the record, and for the reasons set forth below, declines to depart from its prior holding.

**II. ANALYSIS**

Federal Rule of Civil Procedure 59(e) allows a litigant to file a motion to alter or amend a *judgment* of a district court where there has been a clear error of law, newly discovered evidence, an intervening change in the law, or to prevent manifest injustice. *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010) (quoting *Intera Corp. v.*

*Henderson*, 428 F.3d 605, 620 (6th Cir. 2005)) (emphasis added). The Rules further define "judgment" to mean "any order from which an appeal lies." Fed. R. Civ. P. 54(a). By statute, an appeal lies only in "final orders" and certain enumerated interlocutory and collateral orders. *See* 28 U.S.C. §§ 1291, 1292(a). Thus, if a party seeks to invoke Rule 59(e) as grounds to alter a non-final, interlocutory order, that order must be in the small subset of orders from which a party may take an interlocutory appeal.

Federal Rule of Civil Procedure 54(b), on the other hand, provides that

> [A]ny order or other decision, however designated, that adjudicates fewer than all of the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). Although the Federal Rules of Civil Procedure "do not explicitly address motions for reconsideration of interlocutory orders," the Sixth Circuit has noted that "[d]istrict courts have authority both under common law and Rue 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004). The standard for reconsideration under Rule 54(b) mirrors that of Rule 59(e). *See id.* Such reconsideration is warranted when there is "(1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Id.*

The Defendants contend that Dr. Johnson's motion must fail because Rule 59(e) is not the proper vehicle for Dr. Johnson's request. (R. 77 at 2.) (citing *Overstreet v. Lexington-Fayette Urban Cnty. Gov't.*, 305 F.3d 566, 572 (6th Cir. 2002)). That is, the July 13 Order is interlocutory and thus, not a judgment for purposes of Rule 59(e). (*Id.*) In Reply, Dr. Johnson asks that the Court consider her motion under Rule 54(b), if the Court agrees that the July

13 Order is interlocutory and not subject to Rule 59(e). (R. 78 at 2.)[1] At any rate, "the standard for reconsidering interlocutory orders under Rule 54(b) is the same as the standard under Rule 59(e)." *Brookdale Senior Living, Inc. v. Caudill*, 2015 WL 5822633, at *2 n. 2 (E.D. Ky. Oct. 1, 2015) (internal citation omitted). Thus, the Court will consider Dr. Johnson's motion under Rule 54(b). With that in mind, as Dr. Johnson does not purport to bring forth newly available evidence or an intervening change in controlling law, she must show "a need to correct a clear error or prevent manifest injustice" sufficient to warrant reconsideration. *Rodriguez*, 89 F. App'x at 959.

Dr. Johnson brings four separate arguments, all of which she contends provide independently sufficient grounds for reconsideration. (R. 73 at 2.) First, Dr. Johnson asserts that the July 13 Order's sequencing of events regarding the issuance of the ESPB's Final Order should be corrected. (*Id.*) As grounds, Dr. Johnson contends that the EPSB met and voted to issue the Final Order on June 22, 2026, as reflected in the Final Order itself. (*Id.*) The Final Order, however, is signed and dated July 1, 2026. (R. 70-1 at 40.) On June 30, 2026 and July 1, 2026, the Defendants filed with this Court responses in opposition to Dr. Johnson's various pending motions. (R. 64, 65, 66, 67.) In those responses, the Defendants indicated that EPSB had not yet issued its Final Order regarding Dr. Johnson. (*Id.*) Shortly after the Defendants filed their last response, the EPSB transmitted the Final Order to Dr. Johnson.

Dr. Johnson believes that the nine day discrepancy between the EPSB vote on June 22, 2026, and the issuance of the Final Order on July 1, 2026, represents a deliberate attempt

[1] Although it is well settled that new arguments or issues raised in reply are forfeited, the Court gives Dr. Johnson some leeway as a *pro se* party, particularly because her motion can be easily settled on other grounds. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) (noting that replies "do not provide the moving party with a new opportunity to present yet another issue for the court's consideration."); *but see Johnson v. Kirwan*, 2025 WL 611040, at *1 (E.D. Ky. Feb. 25, 2025) ("The Court affords additional latitude to parties who proceed *pro se*.").

on the part of the Defendants to withhold notice of the final disposition from her. (R. 73 at 3.) Dr. Johnson further believes that the Defendants withheld issuance of the Final Order until after they filed their responses with this Court, so that they could represent to the Court that the proceedings remained "ongoing." (*Id.*) Accordingly, Dr. Johnson asks the Court to amend its Order to reflect that the EPSB took action against her on June 22, 2026, not July 1, 2026. (R. 73 at 3.)

The Court sees no reason to amend its factual findings. In its July 13 Order, the Court noted that prior to its own Order, "the EPSB entered its Final Order regarding Dr. Johnson's administrative proceeding." (R. 72 at 5.) This fact's relevance stemmed from whether the state proceeding remained "ongoing" under *Younger*, even after the issuance of the Final Order. The Court found that the state proceedings did remain "ongoing" because the Final Order is subject to appeal, and "for *Younger*, purposes, the State's trial-and-appeals process is treated as a unity system." (R. 72 at 8 (quoting *Alexander v. Morgan*, 353 F.Supp.3d 622, 627 (W.D. Ky. 2018)). Thus, the Court found that Dr. Johnson must exhaust her state remedies prior to seeking review in federal court. *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 369 (6th Cir. 1989) (quoting *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 608)).

Even if the Defendants' actions were as nefariously motivated as Dr. Johnson claims, a fact on which the Court expresses no opinion, the Final Order's date of issuance had no bearing on the Court's analysis. As noted above, the date of issuance of the Final Order was only material insofar as it predated the Court's July 13, 2026 Order. In the Court's factual findings, it specifically noted that the Final Order had been issued prior to the Court's Order and addressed Dr. Johnson's argument that the Final Order's issuance marked the end of the state proceedings, such that an "ongoing" state proceeding no longer existed for purposes of *Younger*. (R. 72 at 5, 7-9.) Whether the EPSB had the Final Order prepared for issuance

on June 22 or July 1, its issuance predated the Court's Order, and the Court explicitly contemplated such fact. Dr. Johnson provides no reason why the date the EPSB voted to approve the Final Order, a fact that existed in the record prior to the Court's Order, would have any bearing on the *Younger* analysis, much less meet the exacting standard warranting reconsideration. Further, the Court committed no error by stating that the EPSB issued the Final Order on July 1, 2026, as the Final Order was in fact issued on that date. Accordingly, Dr. Johnson's first ground for reconsideration does not pass muster.[2]

Dr. Johnson next seeks reconsideration of the Court's characterization of her allegations of bias and bad faith as "conclusory" and "wandering." (R. 73 at 3.) Dr. Johnson asserts that this characterization "does not engage with the specific, documented, record-based facts" in the record. (*Id.* at 3-4.) She then recounts many of the same allegations of bias that this Court has refused to credit on numerous occasions. (*Id.* at 4–5.) In the Court's July 13 Order, it noted that the bad faith exception generally only applies "where state officials initiate *repeated* prosecutions to harass an individual or deter his conduct, and where the officials have no intention of following through on these prosecutions." (R. 72 at 11 (quoting *Ken-N.K., Inc. v. Vernon Twp.*, 18 F. App'x 319, 325 n.2 (6th Cir. 2001)). The Court further noted that Dr. Johnson failed to demonstrate that the EPSB had brought the proceedings against her without a reasonable expectation of success. (*Id.*)

This Court has noted that the standard for evaluating claims of bad faith and bias is a "narrow exception" that is "difficult to meet" and "should be granted parsimoniously." *Woodcock v. Univ. of Ky.*, 820 F.Supp.3d 555, 576 (E.D. Ky. 2026) (quoting *Deters v. Davis*,

[2] Dr. Johnson also asserts that this discrepancy is compounded by the fact that the EPSB issued its Final Order on a date that she had previously indicated she would be out of town and unreachable. (R. 73 at 3.) The Court fails to appreciate the relevance of this fact and notes that Dr. Johnson clearly received notice of the Final Order either immediately or shortly after its issuance, as evidenced by her filing a Motion for Temporary Restraining Order in response to the Final Order on July 2, 2026, the day following the transmittal of the Final Order to her. (R. 68.)

2011 WL 127166, at *8-9 (E.D. Ky. Jan. 14, 2011)). Dr. Johnson asserts that her situation is a "materially different fact pattern" than the type recognized in *Ken-N.K.* as bad faith. (R. 73 at 6.) But that is exactly the point: the facts of Dr. Johnson's EPSB investigation and hearing do not track the facts on which courts have found bad faith because the facts she has presented do not establish bad faith. Dr. Johnson claims that the Court can infer bias because the Final Order imposed the exact conditions that the EPSB prosecutor told Dr. Johnson that he would be seeking if she proceeded to an administrative hearing, rather than agreeing to settle the matter. (R. 73 at 6.) Such fact proves exactly the opposite of bad faith, however. This proves that the EPSB did not bring the proceedings to deter or harass Dr. Johnson without a reasonable expectation of success; it brought the proceedings with the intent to enforce sanctions against her. The fact that the sanctions imposed were the very sanctions that the EPSB prosecutor sought from the beginning dispels, rather than confirms, any allegations of bad faith.

Next, Dr. Johnson asks the Court to revisit the "inadequate forum exception" to *Younger* abstention. (R. 73 at 7.) Dr. Johnson's main qualm is with the Court's characterization of this "exception," rather than its application. (*Id.*) In its Order, the Court noted that it was not aware of the existence of an "inadequate forum exception" to *Younger*, at least by that name. (R. 72 at 12.) The Court further noted that this "exception" appeared to be baked into the *Middlesex* analysis which asks the Court to consider—as a predicate to, rather than an exception from, *Younger* abstention—whether the state proceedings afford an adequate opportunity to raise constitutional issues. (*Id.* (citing *Middlesex Cnty. Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)).

Dr. Johnson's cited authority, *Gibson v. Berryhill*, 411 U.S. 564 (1973), supports the Court's characterization. In *Gibson*, the Supreme Court noted that *Younger* abstention

"naturally presupposes the opportunity to raise and have timely decided by a competent state tribunal the federal issues involved." 411 U.S. at 577. This means exactly what the Court held in its July 13 Order: in order for *Younger* to apply in the first place, the Court must consider whether the parties will have an adequate opportunity to present their constitutional claims in the state tribunal. Any analysis regarding whether the absence of a predicate to application of *Younger* is properly characterized as an "exception" is needlessly pedantic at this juncture, as the ultimate outcome remains the same either way. The Court still remains unaware of an "inadequate forum exception" to *Younger*. In any event, the Court sufficiently engaged with and analyzed Dr. Johnson's arguments to the extent she argued that she would not have an adequate opportunity to present her constitutional claims in the state tribunal, and she does not reject the merits of this analysis, only the characterization.

Finally, Dr. Johnson claims that the Final Order is inconsistent with respect to the length of suspension imposed, which she believes warrants this Court's intervention. (R. 73 at 8.) Dr. Johnson asserts that the Final Order purports to revoke her educator certifications for "ninety (90) days" at some points in the Final Order and for "sixty (60) days" at others. (*Id.*) Dr. Johnson also raises a somewhat related and all too familiar argument: her counselor certificate cannot be revoked without revoking her entire certificate. (*Id.*) She claims that both of these facts support her "inadequate forum" argument. (*Id.*)

However, Dr. Johnson fails to explain why the state tribunal could not remedy these alleged inconsistencies or structural defects, if needed. *See Middlesex*, 457 U.S. at 431 ("Minimal respect for the state processes [] precludes any presumption that the state courts will not safeguard federal constitutional rights.") (emphasis omitted); *see also Frost v. Nessel,* 2025 WL 1136288, at *7 (6th Cir. Apr. 17, 2025) (quoting *Pennzoil Co. v. Texaco*, 481 U.S. 1,

15 (1987)) (holding that the Court "must assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary."). Having not made any showing otherwise, the Court presumes that the Franklin Circuit Court is well suited to remedy any Dr. Johnson's alleged injuries.

In sum, Dr. Johnson has provided no grounds on which reconsideration of the Court's July 13 Order would be warranted. "Motions to reconsider are used sparingly and in rare circumstances." *Bey v. Johnson Cnty.*, 2016 WL 11804542, at * 1 (E.D. Tenn. Apr. 11, 2016). The Court should decline to reconsider a prior ruling "in the vast majority of instances," particularly where such motions "merely restyle or rehash the initial issues." *White v. Hitachi, Ltd.*, 2008 WL 782565, at *1 (E.D. Tenn. Mar. 20, 2008) (internal quotation omitted). Because Dr. Johnson has failed to demonstrate any intervening change in the controlling law, newly discovered evidence, or clear error that has resulted in manifest injustice, the Court declines to reconsider its July 13 Order.

## III. CONCLUSION

Based on the foregoing, it is hereby ORDERED that the Plaintiffs' Motion to Amend or Alter (R. 73) is DENIED. Further, the parties SHALL file a joint status report detailing the progress of the state proceedings every ninety (90) days, beginning ninety (90) days from the entry of this Opinion and Order.

This 21st day of August, 2026.

UNITED STATES DISTRICT COURT EASTERN DISTRICT OF KENTUCKY

**Signed By:**

***Karen K. Caldwell*** KKC

**United States District Judge**